Charles Robert **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–95–01414–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 5, 1998.

Winston E. Cochran, Jr., Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and O'NEILL, JJ.

## OPINION

MURPHY, Chief Justice.

Appellant, Charles Robert Williams ("Williams"), entered a plea of guilty to the offense of murder. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 1994). He was convicted and the trial court assessed punishment, enhanced under TEX. PENAL CODE ANN. § 12.42 (Vernon 1994 & Supp.1998), at confinement for thirty years in the Texas Department of Criminal Justice–Institutional Division. Prior to the determination of guilt, Williams received a hearing before a jury on whether he was competent to stand trial. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 4 (Vernon 1979 & Supp.1998). The jury determined he was competent to stand trial. Williams raises five points of error concerning the competency finding. We affirm.

## Discussion

Williams was charged with the murder of the complainant after he confessed to the killing to police. Prior to his arrest, and even after the murder had occurred, Williams spent time in the Harris County Psychiatric Center, where he had been diagnosed as a paranoid schizophrenic. Nevertheless, a psychologist, providing the only current evaluation of Williams's competency, testified at the hearing that he was competent to stand trial. On the basis of this, and other testimony, the jury found Williams competent to stand trial.

In his first point of error, Williams contends the evidence was factually insufficient to support the jury's determination that he was competent to stand trial. Williams correctly notes that we have the authority to review competency determinations to ascertain whether the finding is against the great weight and preponderance of the evidence. *See Meraz v. State,* 785 S.W.2d 146, 154 (Tex.Crim.App.1990). *Compare Clewis v. State,* 922 S.W.2d 126, 132–36 (Tex.Crim.App.

1996) (discussing factual sufficiency review of the elements of a criminal offense).

"An accused is presumed competent until [ ]he proves h[is] incompetency to stand trial by a *preponderance* of the evidence." *Jackson v. State*, 857 S.W.2d 678, 680 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). "The test of legal competence to stand trial is whether the accused has sufficient *present* ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Loftin v. State*, 660 S.W.2d 543, 545–46 (Tex. Crim.App.1983).

Williams notes that he and the State "approached the competency issue from fundamentally different perspectives." He remarks the "State's position was that expert opinion, based on court-ordered examinations, was the best proof of [his] competency." He touts the view, however, "that other evidence presented a better long-term perspective ... and that the historical inconsistency in [his] mental state meant that counsel could not rely on [him] to aid in his own defense."

▮ Competency, as defined in Article 46.02 of the Code of Criminal Procedure, is only concerned with a defendant's *present* ability to comprehend and aid in his defense. *Compare* TEX.CODE CRIM. PROC. ANN. art. 46.02, *with* TEX. PENAL CODE ANN. § 8.01 (Vernon 1994) (insanity defense); *see also Rodriguez v. State*, 899 S.W.2d 658, 665–66 (Tex.Crim.App.1995) (noting time-frame distinction between competency and insanity defenses). The psychologist testified that Williams "had a factual and rational understanding of the legal proceeding against him" and that he understood the role and functions of the participants in the trial. Williams himself took the stand and testified that he understood the purpose of the hearing and that he had discussed the proceeding with his counsel. Conversely, Williams's counsel focused on a historical review of his

mental problems without presenting evidence to refute the psychologist's opinion or Williams's testimony. Thus, Williams did not sustain his burden of showing, by a preponderance of the evidence, a present inability to understand his situation and assist in his representation.

We overrule Williams's first point of error.

In his second point of error, Williams contends the trial court erred in denying a requested jury instruction on statutory alternatives in the custody and treatment of an incompetent defendant. He asserts that keeping the jurors in the dark about the alternative procedures makes a jury more likely to find a defendant competent.

▮ The purpose of jury instructions is "to inform the jury of the applicable law and guide them in its application to the case." *See* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.1998); *Hutch v. State*, 922 S.W.2d 166, 170 (Tex.Crim.App.1996). Article 46.02, § 4 of the Code of Criminal Procedure establishes a two-tiered procedure which sets out the issues before the jury in making a competency determination:

(d) Instructions submitting the issue of incompetency to stand trial shall be framed to require the jury to state in its verdict:

(1) whether the defendant is incompetent to stand trial; and

(2) if found incompetent to stand trial, whether there is no substantial probability that the defendant will attain the competency to stand trial within the foreseeable future.

The statutory alternatives for the custody and treatment of a defendant are relevant, if and only if, the jury preliminarily determines the defendant is incompetent, and the alternatives are then only indirectly implicated based upon the jury's determination of whether there is a substantial probability the defendant will attain competency to stand trial in the foreseeable future.[1] *See* TEX.

---

1. The three statutory alternatives providing for the custody and treatment of an incompetent defendant are as follows:

(g) If the defendant is found incompetent to stand trial and it is determined that there is a

substantial probability that he will attain the competency to stand trial within the foreseeable future, the court shall proceed under Section 5 [Criminal Commitment] of this article.

CODE CRIM. PROC. ANN. art. 46.02, § 4(d), (g)-(i). Nowhere in the statute is the jury given the power to consider the statutory alternatives in making its determination. Therefore, we believe the trial court's refusal of Williams's proposed instruction was proper because it delved into matters that were not a part of the law of the case. *See, e.g., Peddicord v. State*, 942 S.W.2d 100, 110 (Tex. App.—Amarillo 1997, no pet.).

■ Furthermore, any error committed by denying the placement of the requested instruction in the jury charge would have been harmless due to the jury's finding that Williams was competent. *See Dutton v. State*, 874 S.W.2d 206, 209 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) ("in reviewing the trial court's charge, we first determine whether the charge given was erroneous, and, if so, whether the error was harmful"). As previously noted, the statutory alternatives in the custody and treatment of an incompetent defendant are *only* indirectly implicated if the jury makes the preliminary determination of incompetency. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 4(d), (g)-(i); TEX.R.APP. P. 44.2.

Williams, nevertheless, analogizes the necessity for instructions on the statutory alternatives in the custody and treatment of an incompetent defendant to the requirement the jury be informed, in the prosecution of a potential death penalty recipient, that life imprisonment means a defendant will not be released on parole. *See Simmons v. South Carolina*, 512 U.S. 154, 168–69, 114 S.Ct. 2187, 2196–97, 129 L.Ed.2d 133 (1994). The overriding consideration for the United States Supreme Court in establishing the necessity for instructions about a life-without-parole sentence in death penalty cases was, however, the necessity for truthfulness in the jury charge when the prosecution had argued for the death penalty by pointing to the defendant's potential future dangerousness. *See id.*

■ Similar concerns are not present in the competency determinations of criminal defendants. The necessity for informing the jury on the statutory alternatives on custody and treatment is not required as a means of defining the options available to the jurors, unlike their ability to choose between the death penalty and "life imprisonment." *See, e.g., Smith v. State*, 898 S.W.2d 838, 850–853 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995) (holding that a *Simmons*-like instruction was not necessary where "the issue of appellant's potential early release from prison based upon parole, pardon or commutation, was not placed before the jury either through argument or evidence"). The jury's role in a competency determination is specifically defined and limited by Article 46.02 of the Code of Criminal Procedure.

As to Williams's contention that the absence of an instruction informing of the statutory alternatives makes it more likely the jury will find a defendant competent due to their fears the person will escape punishment, we believe the argument is too specious and speculative to constitute a ground for error. *Cf. Nance v. State*, 807 S.W.2d 855, 866 (Tex.App.—Corpus Christi 1991, pet. ref'd) ("[a] juror who can put aside any bias, prejudice, or conclusion of guilt and base his verdict on the evidence may serve on the jury").

We overrule Williams's second point of error.

In his third point of error, Williams asserts the trial court erred in forbidding voir dire

---

(h) If the defendant is found incompetent to stand trial and there is found no substantial probability that he will become competent within the foreseeable future, and the court determines there is evidence that the defendant is mentally ill or is a mentally retarded person, and all charges pending against the defendant are not then dismissed, the court shall proceed under Section 6 [Civil Commitment—Charges Pending] of this article or shall release the defendant.

(i) If the defendant is found incompetent to stand trial and there is found no substantial probability that he will become competent within the foreseeable future, and the court determines there is evidence that the defendant is mentally ill or is a mentally retarded person, and all charges pending against the defendant are then dismissed, the court shall proceed under Section 7 [Civil Commitment—Charges Dismissed] of this article or shall release the defendant.

TEX.CODE CRIM. PROC. ANN. art. 46.02, § 4(g)-(i).

on the statutory alternatives in the custody and treatment of incompetent defendants. Again, Williams contends that disallowing the inquiry makes a jury more likely to find a defendant competent to stand trial.

We review a trial judge's limitation of voir dire for abuse of discretion. *See Caldwell v. State,* 818 S.W.2d 790, 793 (Tex. Crim.App.1991), *overruled on other grounds, Castillo v. State,* 913 S.W.2d 529 (Tex.Crim. App.1996). The determination of abuse of discretion "turns on whether [defendant's] question was proper . . . the defendant has the burden of showing that the question was proper." *See Bethune v. State,* 821 S.W.2d 222, 230 (Tex.App.—Houston [14th Dist.] 1991), *aff'd per curiam,* 828 S.W.2d 14 (Tex. Crim.App.1992).

We believe the trial court did not abuse its discretion because the alternatives were not an issue applicable to the case. *See Green v. State,* 934 S.W.2d 92, 106 (Tex.Crim. App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). In explaining why it would not allow either jury instructions or voir dire examination on the statutory alternatives, the trial court noted "their [the jury's] sole job at this time . . . is limited to the determination of the present competency and probability as to whether the defendant will attain competence in the future and letting them know all those other options is confusing and I don't think is required." The limitation imposed by the trial court was appropriate, and we believe Williams's argument on the increasing likelihood of the jury finding him competent due to the failure to voir dire on the alternatives is too speculative to constitute a sufficient ground for trial court error in this situation.

We overrule Williams's third point of error.

In his fourth point of error, Williams contends the trial court erred in making numerous comments that defense evidence was not relevant. Nevertheless, Williams admits he failed to make an objection to the trial court's comments. Failing to properly object, Williams did not preserve error. *See Sharpe v. State,* 648 S.W.2d 705, 706 (Tex. Crim.App.1983).

Furthermore, "to constitute reversible error in violation of Art. 38.05, V.A.C.C.P., the comment of the court must be such that it is reasonably calculated to prejudice the defendant's rights." *Id.; see* also TEX.CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979) (statute prohibiting a judge from discussing or commenting upon the weight of evidence). The trial court's castigation of defendant's evidence was matched by a similar reprimand to the State that it restrict itself to evidence relevant to the issue of Williams's competency. Thus, any error committed by the trial court was not "calculated to benefit the State or prejudice" Williams. *See Carrillo v. State,* 591 S.W.2d 876, 893 (Tex.Crim.App. [Panel Op.] 1979), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988).

We overrule Williams's fourth point of error.

In his fifth point of error, Williams contends the trial court erred in prohibiting his question-and-answer offer of proof on testimony the court had excluded. During defendant's direct examination of a co-worker, the following exchange occurred:

Q.: You think he could have, you know—that he would have understood what we commonly call Miranda warnings—

MR. KIATTA [Prosecutor]: Objection: That calls for—

Q.:—and the consequences?

MR. KIATTA: I'm sorry. I thought you were finished.

Objection. Calls for speculation.

THE COURT: It's sustained.

MR. COCHRAN [Defendant's Counsel]: Can I proffer for the record that the answer would be in the negative?

THE COURT: Since he didn't answer the question, I don't believe I'll accept the proffer.

Continue.

MR. COCHRAN: Do you think Mr. Williams, at that time, would have understood the gravity of confessing to a brutal murder?

MR. KIATTA: Your Honor, objection, calling for speculation. It's also irrelevant to competence.

THE COURT: Sustained on both grounds.

MR. COCHRAN: Your Honor, again, we'd just like to proffer that it would be a negative answer.

THE COURT: No.

Williams's counsel later requested to have "the witness brought back, especially in light of the subsequent testimony to do a Q and A form on that," but the trial court denied the request.

A party has an absolute right to make an offer of proof, and that right is applicable in competency hearings. *See Kipp v. State,* 876 S.W.2d 330, 333 (Tex.Crim. App.1994). Nevertheless, the error in this case was harmless. *See* Tex.R.Crim. Evid. 103 cmt. (adoption of rule not meant to change harmless error doctrine); Tex.R.App. P. 81. Rule 103(a) of the Rules of Criminal Evidence provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Williams does not assert any error in the trial court's exclusion of the witness's testimony, and it is clear, from the context of the above exchange, exactly what he wanted to preserve for appeal. Thus, Williams's substantial rights were not prejudiced by the trial court's failure to permit a question-and-answer offer of proof.

We overrule Williams's fifth point of error.

## III. Conclusion

We affirm the judgment of the trial court.